# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------X
MONIQUE THACKER,

        Plaintiff,

  -against-

HSBC,

        Defendant.
-------------------------------------------------------------------------X

**Index No.**

**SUMMONS**

Date Index No.
Purchased: August 19, 2022

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer within twenty [20] days after the service (or within thirty [30] days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgement will be taken against you by default for the relief demanded in the complaint.

The plaintiff designates New York County as the place of trial which is the county in which the events that are the basis of the legal claims occurred.

Dated: New York, New York
      August 19, 2022

                                    **KAISER SAURBORN & MAIR, P.C.**

                            By: _____
                                    Daniel J. Kaiser, Esq.

                            Attorney for plaintiff
                            30 Broad Street, 37th Fl.
                            New York, New York 10004
                            (212) 338-9100

**SINGER DEUTSCH LLP**

By: _____/S/_____
    John D. Singer, Esq.

Attorney for plaintiff
555 Fifth Avenue, 17th Fl.
New York, New York 10017-5102
(212) 682-3939

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
-------------------------------------------------------------------------X
MONIQUE THACKER,

       Plaintiff,

  -against-

HSBC,

       Defendant.
-------------------------------------------------------------------------X

**Index No.**

**COMPLAINT**

Plaintiff, Monique Thacker, by her attorneys Kaiser Saurborn & Mair, P.C., as and for her complaint against defendant, alleges as follows:

## PARTIES, JURISDICTION, AND NATURE OF ACTION

1. Plaintiff, ("plaintiff" or Thacker"), is a current employee of HSBC.

2. Upon information and belief, defendant, HSBC ("defendant" or "HSBC"), is a financial institution authorized to do business in New York State.

3. Venue is properly laid in this court in that the causes of action arose in New York County.

4. Ms. Thacker was discriminated against by HSBC because of her national origin and because she repeatedly raised concern regarding serious regulatory violations. Ms. Thacker asserts claims under Executive Law §296, New York City Administrative Code §8-502(a) and New York State Labor Law 740(as amended).

# BACKGROUND

## I.
## MS. THACKER'S HSBC EMPLOYMENT

5. On January 22, 2013 Ms. Thacker, of Indian national origin, was hired by HSBC into the position of Chief Administrative Officer.

6. In March 2013 Ms. Thacker was appointed President of HSBC Insurance Agency.

7. Correspondingly, Ms. Thacker was requested to assume responsibility of two teams: 1) Principal Review Desk; and 2) Wealth Supervisors.

8. Separately, in 2015 Ms. Thacker was asked to lead remediations, audits and exams.

9. Ms. Thacker's job performance was steadily strong throughout the tenure of her HSBC employment.

10. Her performance reviews were consistently strong.

11. Ms. Thacker was also retaliated against by other senior HSBC senior managers for raising concern regarding compliance and regulatory violations by HSBC.

## II.
## THE NATIONAL ORIGIN DISCRIMINATION

12. Mr. Pablo Sanchez was hired in July 2015 and became the Head of Retail Banking and Wealth Management, NA. On April 3, 2019 Mr. Pablo Sanchez verbally assaulted Ms. Thacker in his office.

13. For the first time, Ms. Thacker's 2019 performance review is downgraded to strong performer from top performer. HSBC provided zero viable explanation for the downgrade.

14. On September 24, 2020 Ms. Thacker was appointed interim Business Execution and Transformation Head (hereinafter, "BETH")/Chief of Staff for the newly combined teams, i.e,

2

formerly the "Chief Administrative Officer" role, wherein she still had supervisory responsibilities for said teams.

15. On September 30, 2020 Mr. Mark Pittsey submitted organizational chart with supervision as a separate role: Head of Investments and Regulatory Admin = 'Supervision'.

16. On November 13, 2020 Human Resources identified 6 roles that did not require posting. Included among the six postings was Head of Investment and Regulatory Administration, Ms. Thacker's role for eight years. In the other roles five white males were named. The new published organizational chart showed an empty box for Ms. Thacker's position.

17. On December 16, 2020 Ms. Thacker interviewed with two white males but was not offered the opportunity to interview with the remaining HSBC interviewers.

18. On December 21, 2020, white female, is appointed Chief of Staff, Wealth. This female was offered the position even though Ms. Thacker was in the role, on an interim basis, for the combined role and was role holder for Wealth.

19. On January 5, 2021 Ms. Thacker sent email to Mr. Pittsey questioning why the Head of Investments and Regulatory Admin role was being posted. She copied HR and her complaint was escalated to Employee Relations. Subsequently, Mr. Pittsey was later advised by HR that he cannot post Mr. Thacker's role. It was clear that Ms. Thacker was being targeted.

20. In February 2021 Ms. Thacker's title changes from Chief Administrative Officer to revised title of 'Head of Wealth Administration, HSBC Securities.'

21. In March 2021 HSBC requests that Ms. Thacker lead the Financial Consultant Compensation review/change. Strategic Project.

22. In April 2021 Ms. Thacker assumed responsibility for the High Net Worth Supervisor Team (responsible for the supervision of 100+ licensed PB FTE).

3

23. Following Ms. Thacker's assumption of these additional responsibilities, Mr. Pittsey confided in her that he attempted to secure her a pay increase commensurate with her added responsibilities but Mr. Sanchez responded "fuck that" and denied the full increase despite additional responsibility and risk. As a woman of color, it was typical for Ms. Thacker to be underpaid at HSBC.

24. On July 28, 2021 the <u>Wealth</u> Chief of Staff role is posted again unlicensed. In early August 2021 Ms. Thacker applied for <u>WPB</u> Chief of Staff, US position in an effort to remove herself from the discrimination.

25. In August 2021 Ms. Thacker interviewed for <u>WPB</u> Chief of Staff with a white male and the Head of HR for Wealth and Personal Banking, US. The Head of HR was her interviewer despite Ms. Thacker's Employee Relations complaint directed at Mr. Sanchez and her.

26. On October 14, 2021 a *white male, is appointed lead* under Wealth Center Distribution workstream for governance meetings versus Ms. Thacker as the workstream lead for past five months without any mention to Ms. Thacker.

27. In December 2021 Ms. Latini recommended a change to her title because it showed up in an org chart box in London as 'Wealth Admin' and viewed as an unnecessary role.

28. The blatant national origin bias is captured by the following remark by a senior HR manager, who has been accused in unrelated Federal Court Litigation of, *amongst other things*, ignoring claims of sexual harassment - during a meeting in her office, exclaimed to Ms. Thacker that "<u>**you're dark**</u>."

29. The comment was vile and offensive and is evidence of the national origin bias that thrives at HSBC.

4

### III.

### MS. THACKER COMPLAINTS OF REGULATORY
### VIOLATIONS AND COMPLIANCE CONCERNS

30. Beginning in 2021 Ms. Thacker repeatedly raised concerns relating to the following serious regulatory violations. The whistleblower retaliation is particularly egregious since non-Indian white employees engage in regulatory violations all of the time without consequence.

- In June 2021 – Plaintiff raised concerns around the PLA with Chile HSBC. RM in Chile violating the agreement.

- On April 14, 2022 – a) six (6) days *after* a Legal Hold Notice was disseminated concerning the utilization of WhatsApp to communicate about HSBC business; and b) *after* stern reminders were propounded by HSBC's Global Head of Compliance and its United States Head of Compliance, respectively, regarding WhatsApp usage – two (2) HSBC Private Banking Product employees were "caught" using the non-approved HSBC communication platform WhatsApp. Specifically, these two (2) HSBC employees were chatting on Cisco Jabber, wherein one HSBC employee asked of the other "**did you see my WhatsApp?**" The other HSBC employee replied "**I just responded.**" One (1) of these HSBC employees was a Registered Representative and the other was an Associated Person. This colloquy was caught by the Company's Surveillance Team in India and the matter was then routed to Surveillance in New York and ultimately elevated to Ruggiero. The two employees were disparaging Regulatory Compliance employees.

After consulting with Nicholas Mitchell Sahidi (**CRD # 4044856**) (hereinafter, "Sahidi")[49] – a Managing Director and HSBC Securities' Chief Compliance Officer/Americas Head of Markets Compliance, respectively – Sahidi suggested that Ms. Thacker route the matter to Lee Renzin, Esq. (hereinafter, "Renzin"), HSBC's Deputy General Counsel/Deputy Head of Global Investigations and Regulatory Enforcement, and an HSBC employee since July 2014, respectively) suggested that Ms. Thacker handle said matter as a "policy violation." Ms. Thacker responded that her process was to work with Compliance and Employee Relations in order to make a recommendation, a Managing Director and the Company's Head of Investments & Wealth Solutions for Wealth and Personal Banking for the Americas, respectively – frantically

---

[49] According to his publicly-available FINRA CRD Report, Sahidi has been **employed** by various HSBC entities from **January 2018 - the present**.

According to his publicly-available FINRA CRD Report, Sahidi has been **registered** with HSBC Securities from **January 30, 2018 - the present**.

contacted Tucker. Tucker informed Zhu that he could **not** do anything about it and suggested that she contact Ruggiero, which she did. Ruggiero explained to Zhu that the WhatsApp messages of the employees involved needed to be reviewed for content. Thereafter, Ruggiero and Ms. Thacker updated Latini concerning this issue given Zhu's lofty position at the Company. Rather than being concerned with the policy and regulatory violations, the matter was turned around whereby Jessie Zhu and the employee stated that John Ruggiero, the Chief Compliance Officer was only raising this issue against them because of the disparaging remarks made about his team in the WhatsApp and Jabber communications.

Ultimately, notwithstanding the fact that the subject employees had indeed engaged in terminable offenses, they only received "coaching," *i.e.*, highly preferential treatment. In fact, Head of Advisory was also nominated and permitted to participate in the Leadership Trip to Aspen, Colorado after this violation. The reason for this highly preferential treatment was because they reported to Zhu, and this highly preferential treatment was **100%** consistent with "Business" "winning out" over "Compliance" at HSBC, much to the considerable, on-going frustration of Ms. Thacker and others who have consistently attempted to adhere to Company Policy and Regulatory requirements.

- On August 10, 2022 during a zoom meeting for PRISM with a number of stakeholders, the Head of Risk was on a Jabber chat with the Head of Advisory and typed while the chat was being displayed on zoom and disparaged Ms. Thacker's direct report, Craig Tucker Head of High Net Worth Supervision, when he politely asked that he finish his statement so he could make his point and be heard after being interrupted throughout the call. She said he has "such a short fuse". The Head of Risk had also made a statement on the Jabber chat that "Silence is acceptance". To this point:

    - Retaliation, threats, bullying and intimidation have emanated from all levels of the Company against Supervision and Compliance teams for "pushing-back" on unethical or unlawful business practices, and

    - Threats are routinely made if products are not launched in the prescribed time-frame.

- The Regional Managers under Pittsey, were **not** able to supervise the licensed individuals who reported to them. Accordingly, those individuals were supervised by Tucker who, as noted above, reported, and reports, to Ms. Thacker. Thus, in effect, Ms. Thacker was perched atop the Sales Supervision Organizational Chart, with which she was **not** comfortable in the slightest due to the Company's well-established penchant for willfully flouting Rules, Policies, Procedures, etc. Nevertheless – and notwithstanding Ms. Thacker's extreme discomfort – it was structured that way "by default."

6

- HSBC prioritizes Sales and Revenues over Supervision and Compliance;

  - There are a plethora of Company employees managing licensed employees who are **not** principal licensed;

  - The Head of HSBC's Investment Counselors is **not** principal licensed;

  - HSBC's Head of Insurance is **not** securities licensed;

  - HSBC's Chief of Staff for Wealth is **not** licensed and is now handling much of the Broker-Dealer responsibilities;

- Cross-Border violations have transpired *vis-a-vis* a) the Hong Kong Pilot Program (mis-communicating delivery in order launch); and b) the PLA between HSBC Chile and the United States, in connection with which a Relationship Manager – has violated the PLA in a number of instances;

- HSBC was attempting to create an "exception process" to maintain accounts in ADP *solely* for the purpose of capturing fees;

- HSBC has routinely launched products – such as BREIT, BCRED, GIS, etc. – *prior* to requisite contingencies being met, *i.e.*, *prior* to having Supervisory Procedures in place and the proper product training for its sales-force.

- In US Wealth and Personal Banking, 18-19 Compliance employees RIF'd in July.

- HSBC's Regional Manager and Head of Wealth for the United States wanted to lift an Investment Counselor off of Heightened Supervision after only four (4) months because the same was hurting business and obstructing revenue generation. This Investment Counselor in the Private Bank had been placed on Heightened Supervision for perpetrating a number of Compliance violations in **2021**. Prior to being placed on Heightened Supervision, she had received multiple warnings, including a Final Written Warning. Even though a) Legal and Compliance were/are insistent on said individual remaining on Heightened Supervision; and b) **no** Company employees have *ever* been taken off of Heightened Supervision prior to the passage of one year.

- A client– was on-boarded by the Private Bank in the United States in **2021** after being exited by HSBC Mexico in **2016**. Apparently, the Mexican Tax Authorities have been actively pursuing her for the payment of back taxes and HSBC Supervision flagged a number of negative issues with said client ranging from accusations by her former spouse of alleged corruption, fraud and embezzlement, etc. Nevertheless, the Company's Risk Committee decided to retain this client.

7

- In Early February 2022, Ms. Thacker met with Legal and Compliance and then US Head of WPB, Tara Latini, to discuss changing Ms. Thacker's reporting structure from Mr. Pittsey to someone else as his legally dubious decisions were placing Ms. Thacker's licenses at risk.

- On February 23, 2022 Mr. Pittsey communicated to Ms. Thacker her bonus and compensation numbers. He asked if Ms. Thacker had anything to say to which she responded by sharing her dissatisfaction and told him he had marginalized her role and reminded him what she accomplished in 2021. It was the 2nd lowest bonus number since the inception of her employment.

- On March 17, 2022 Wealth Centers taken away from Ms. Thacker and given to Pittsey's Chief of Staff and a junior employee, both white.

- On March 21, 2022 Ms. Thacker's team raises a number of issues around a product launch – Global Insurance Solutions ("GIS"). Irene Blumberg, a white female, advised co-workers that Ms. Thacker is "trying to bring her [Blumberg] down" following Ms. Thacker raising issues regarding the mishandled product launch.

- In March Ms. Thacker raised (again) to Mr. Pittsey that the Investment Counselors cannot continue to report to 'The Head of Investment Counselors"because he did not possess his principal licenses. Mr. Pittsey was concerned about the "employee experience" if we moved the Investment Counselors to another manager. Ms. Thacker explained HSBC didn't have a choice. The employee is still not licensed and continues to manage the team.

- April 2022, Ms. Thacker's title **was c**hanged to 'Head of Investment and Insurance Supervision and Regulatory Administration'.

- April 1, 2022 Ms. Thacker sent email to the product team, copying Jessie Zhu (Head of Product) and Mark Pittsey with a chart of hours of work required from her team for each product launch (over 100 hours per product) because Jessie Zhu (Head of Product) continues to push products wanting to launch asap.

- April 27, 2022, WhatsApp issue – Two 'legacy PB' employees (Registered Rep and NRAP) using non-approved HSBC communication platform (WhatsApp). Ms. Thacker escalated to John Ruggiero, CCO. Shortly after, Jessie Zhu and the employees were claiming the CCO was retaliating against them. This issue was being viewed as a potential terminable offense. These employees received coaching - preferential treatment because they report to Jessie Zhu, Head of Investment Wealth Solutions (Product).

- May 3, 2022 a junior member from the Insurance product team sent an email to the field with misinformation on GIS. Ms. Thacker responded on May 4th and requested that he retract the email so she and her team can provide clarity. That individual responds suggesting Ms. Thacker's email was adversarial.

8

- May 6, 2022 Ms. Thacker emailed Mr. Pittsey requesting assistance with individuals on the product team. Her email stated "There appears to be an emerging pattern of behavior that warrants escalation to your attention regarding adherence to our required policies and procedures related to new product/strategy implementation." Mr. Pittsey's response effectively blamed Ms. Thacker instead of addressing the issue.

- June 1, 2022 Ms. Thacker communicated on behalf of her direct report, Jason L. Smith, after he raised concerns to her via email that his team felt retaliated against and threatened when performing their roles which are regulatory in nature. Product Team (Legacy PB) threatening on calls that they will escalate if we don't let them do as they say, regardless of policies or regulations.

- In early June 2022, several employees said they felt "threatened" after a call on Hong Kong pilot when senior management stated "we have to do what's right for the business. Get comfortable with being uncomfortable." Several individuals have raised concerns about the Product Team – feeling threatened, bullied and retaliated against. Compliance individuals told to 'stand down' when raising issues or pushing back.

- During most of 2022 - PRISM Call Head of Advisory – owner of PRISM project had 'promised' to launch by end of 2022. When it was becoming apparent that the unrealistic deadline was not going to be met, she continued to threaten that she would raise this to senior management and blame, Compliance and Supervision as the issue.

- Mid-June 2022, Craig Tucker, Head of High Net Worth Supervisors**,** raised concerns around regulatory violations and concerns as well as retaliation. Ms. Thacker recommended that he open a case with HR Confidential.

- During the week of June 21, 2022 a Senior Executive visits US. During his visit, he heads an Exchange Meeting and advised attendees at the Exchange Meeting in reference to getting business done <u>"if someone is in your way (referring to Compliance) push them out of it."</u>

- June 22, 2022 Rhonda Toft, Employee Relations, scheduled a meeting with Ms. Thacker entitled "HR Matter". In view of Ms. Thacker's continued concerns regarding compliance issues and her own treatment as a non-white employee, HSBC was now targeting Ms. Thacker for retaliation.

- June/July 2022, Ms. Thacker's business manager and 'right hand' (worked for her for 7 years) is now doing work for SMr. Pittsey's Chief of Staff.

31.     Ms. Thacker raised concerns regarding these compliance issues as well as others.

9

IV.

**THE RETALIATORY ACTS TAKEN AGAINST PLAINTIFF**

32. Ms. Thacker is being treated adversely by HSBC in terms of her role and responsibilities within HSBC as well as her overall compensation and differently and worse than her white counterparts. In addition to the retaliation described elsewhere in the pleadings, the following is a summary of the principle retaliation by HSBC against Ms. Thacker:

- With respect to Pittsey's abject trivialization of Ms. Thacker, he does **not** speak with her unless they are in a meeting together or if Ms. Thacker asks to speak with him. Pittsey has inserted a white employee and a junior and inexperienced recent graduate trainee, as the "messenger" and conduit between he and Ms. Thacker. To this end, Pittsey has engaged this junior employee in highly confidential and sensitive staff matters that are wholly inappropriate for someone at her very junior level, going so far as to query about Ms. Thacker's team members. In short, Pittsey has relegated Ms. Thacker to "outsider" status and, concomitantly, has created a toxic working environs for Ms. Thacker.

- Mr. Pittsey excluded Ms. Thacker from meetings that she would otherwise be expected to attend given her role, such as: 1) Regional Sales Meetings; 2) Wealth Center Meetings; 3) Market Manager Meetings; 4) Business Planning Meetings; 5) Strategy Meetings; and 6) Regulatory and Supervision-related Meetings;

- Mr. Pittsey obdurately refused to apprise Ms. Thacker of topical business matters, even though she has the supervision of the teams within her ambit;

- Mr. Pittsey treated the Regulatory function as the "enemy" and this antipathy has passed- down to his teams which, in turn, has contributed to the patently hostile nature of the present working environment;

- Mr. Pittsey demeaned Ms. Thacker and her team in the presence of other Senior Company Managers, going so far as to refer disdainfully to Ms. Thacker and her team as "**Surveillance**" multiple times in one particular meeting;

- Mr. Pittsey confided to Ms. Thacker that at any other financial services industry institution, she would **not** be a direct report of his;

- Mr. Pittsey spontaneously appeared Zoom or telephone calls when

10

- meetings with "legacy" Private Banking employees and would proceed to undermine Ms. Thacker in front of clients.

- On May 26, 2022, at Mr. Pittsey's Town Hall Meeting, he announced that he had hired a Relationship Management team in Mexico with dual reporting to both Mexico and Pittsey from a governance perspective. This should **not** have been effectuated *without* Ms. Thacker's – or someone on her team's – weighing-in based upon the serious nature of cross-border issues as well as the issues by which the Company was already engulfed in Chile. To wit, Relationship Managers in Mexico are **not** securities licensed, **nor** is the Company registered in Mexico. This is another example of Mr. Pittsey undermining Ms. Thacker's authority.

33. Ms. Thacker was subjected to adverse employment actions and treated differently and worse than her white counterparts because of her national origin and because she raised concerns about serious compliance and regulatory issues.

34. HSBC discriminated against plaintiff in reckless disregard of her civil rights under New York State and New York City Human Rights statutes.

35. HSBC had no legitimate business reason for its adverse treatment of Ms. Thacker including but not limited to, its promotion of far less qualified white employees and the bank's marginalization of plaintiff in her role and responsibilities at HSBC.

36. Defendant's conduct has had a continuing impact on plaintiff.

## CAUSE OF ACTION I

37. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "36" as if incorporated and realleged herein.

38. Defendant discriminated against plaintiff because of her national origin and because she repeatedly raised concern regarding serious regulatory violations.

39. By reason thereof, defendant has violated Executive Law §296, and plaintiff has been damaged in an amount to be determined at trial.

## CAUSE OF ACTION II

40. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "36," and "38" as if incorporated and realleged herein.

41. By reason thereof, defendant has violated New York City Administrative Code §8-502(a), and plaintiff has been damaged in an amount to be determined at trial.

## CAUSE OF ACTION III

42. Plaintiff repeats and reiterates the allegations contained in paragraphs "1" through "36," and "38" as if incorporated and realleged herein.

43. Ms. Thacker was retaliated against for raising concerns about HSBC's regulatory violations that violated federal law.

44. By reason thereof, defendant has violated New York State Labor Law 740[as amended]and plaintiff has been damaged in an amount to be determined at trial.

**WHEREFORE,** plaintiff demands judgment against defendant as follows:

(i) On the First Cause of Action assessing compensatory damages in an amount to be determined at trial;

(ii) On the Second Cause of Action assessing compensatory damages in an amount to be determined at trial and punitive damages in an amount to be determined at trial;

(iii) On the Third Cause of Action assessing compensatory damages in an amount to be determined at trial;

(iv) Attorney fees and disbursements; and

(v)     For such other relief as the Court deems just and proper.

Dated: New York, New York
August 19, 2022

**KAISER SAURBORN & MAIR, P.C.**

By: _____
Daniel J. Kaiser, Esq.

Attorney for plaintiff
30 Broad Street, 37th Fl.
New York, New York 10004
(212) 338-9100

**SINGER DEUTSCH LLP**

By: _____/S/_____
John D. Singer, Esq.

Attorney for plaintiff
555 Fifth Avenue, 17th Fl.
New York, New York 10017-5102
(212) 682-3939