USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/24/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
MONIQUE THACKER, :
:
                    Plaintiff, :
: 1:22-cv-7120-GHW
       -against- :
: MEMORANDUM OPINION
: AND ORDER
HSBC BANK USA, N.A., :
:
                   Defendant. :
-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

Plaintiff Monique Thacker is a long-time employee of Defendant HSBC Bank USA, N.A. But in this lawsuit, Ms. Thacker alleges that over the last several years, HSBC engaged in multiple instances of illegal conduct. First, Ms. Thacker claims that HSBC discriminated against her because of her national origin by—among other things—failing to promote her despite her qualifications. Second, she alleges that HSBC illegally retaliated against her after she internally reported incidents of regulatory noncompliance. HSBC denies her claims and has moved to dismiss the case.

Because Ms. Thacker has pleaded sufficient facts to plausibly suggest that she was not promoted to at least one position because of her national origin, but has not pleaded facts that sufficiently allege that she suffered any retaliatory actions because of her internal complaints, HSBC's motion to dismiss is GRANTED IN PART.

I. BACKGROUND

   A. Facts[1]

Plaintiff Monique Thacker, an Indian woman, was hired by HSBC in the role of Chief Administrative Officer in January 2013. Dkt. No. 23 ("FAC") ¶ 5. For years, Ms. Thacker's tenure was marked by strong achievement and positive reviews. Two months into her time at HSBC, for instance, she was appointed President of HSBC Insurance Agency, and was made responsible for two teams (Principal Review Desk and Wealth Supervisors). *Id.* ¶¶ 6–7. From 2015 onward, moreover, Ms. Thacker was made responsible for leading remediations, audits, and exams. *Id.* ¶ 8. And her performance reviews from her hiring until 2019 were either "Outstanding" or "Top." *Id.* ¶¶ 9, 13.[2]

But Ms. Thacker's relationship with HSBC began to sour in 2019. In April of that year, she was "verbally assaulted" by HSBC's Head of Retail Banking and Wealth Management Pablo Sanchez. *Id.* ¶ 12. Sometime later in 2019, without explanation, she was given a "Strong" performance rating—lower than "Outstanding" or "Top"—for the first time. *Id.* ¶ 13. And while she was appointed interim Business Execution and Transformation Head (a revised title for the position of Chief Administrative Officer) in September 2020, *id.* ¶ 14, shortly thereafter, she was turned down for a promotion. Specifically, after Ms. Thacker interviewed for the position of Wealth Chief of Staff in December 2020, a white female named Jennifer Yungbluth was appointed instead. *Id.* ¶¶ 17–18. Ms. Yungbluth was selected even though Ms. Thacker's qualifications for the role were much stronger than Ms. Yungbluth's: While Ms. Yungbluth had no wealth management,

---

[1] Unless otherwise noted, the facts are taken from the complaint and are accepted as true for the purposes of this motion. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] Though Ms. Thacker's pleading does not explicitly say so, the Court infers that these are the highest rankings one can receive in HSBC's review system. *See Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam) (noting that Courts must draw all reasonable inferences at the motion-to-dismiss stage in favor of the non-movant— here, Ms. Thacker).

2

private banking, sales management, business performance, business management, workforce planning, strategy, major business transformation, or large-scale project management experience, Ms. Thacker had between twenty and twenty-five years of experience in each of these areas. *Id.* ¶ 19. Moreover, Ms. Yungbluth had no professional licenses while Ms. Thacker had ten, and Ms. Yungbluth had only worked in banking for seven years while Ms. Thacker had twenty-five years in the industry under her belt. *Id.* All of this experience, Ms. Thacker states, was critical for success in the Wealth Chief of Staff role. *Id.* ¶ 20.

In February 2021, meanwhile, Ms. Thacker's title changed from "Chief Administrative Officer" to "Head of Wealth Administration, HSBC Securities" and she was told—without additional explanation—that she could no longer use the word "Chief" in her title. *Id.* ¶ 22. After Ms. Thacker assumed responsibility for the company's Wealth Management Financial Consultant Compensation redesign initiative in March 2021 and its High Net Worth Supervisor Team in April 2021, *id.* ¶¶ 23–24, an individual named Mark Pittsey attempted to secure a pay increase for her from Mr. Sanchez. *Id.* ¶ 25.[3] But Mr. Sanchez allegedly responded by saying "f*** that" and denied Ms. Thacker the full increase in pay despite her additional responsibilities. *Id.*

In July 2021, the Wealth Chief of Staff role opened again following Ms. Yungbluth's resignation. *Id.* ¶ 26. A colleague recommended that Ms. Thacker not reapply for the position, so she chose not to do so. *Id.* A white male was eventually hired for the position, despite the fact that he had limited qualifications. *Id.* ¶¶ 26–28. In August 2021, Ms. Thacker applied and interviewed for the role of Wealth and Personal Banking Chief of Staff role at HSBC, but, again, a white male was appointed instead. *Id.* ¶¶ 29–31.

---

[3] The Court understands Mr. Pittsey to be Ms. Thacker's manager or supervisor, although the complaint does not specify his role.

3

From June 2021–June 2022, Ms. Thacker raised concerns about a series of what she calls "serious regulatory violations" to HSBC management. *Id.* ¶¶ 35–36. And from February–July 2022, Ms. Thacker alleges that she experienced a variety of adverse consequences that she traces to "her national origin and because she raised concerns about serious compliance and regulatory issues." *Id.* ¶¶ 37–38. Ms. Thacker also alleges that at some point during her employment with HSBC, a senior HR manager exclaimed to Ms. Thacker "you're dark" during a meeting. *Id.* ¶ 33.

### B. Procedural History

Ms. Thacker filed her initial complaint in New York State Court on August 19, 2022. Dkt. No. 1 Ex. 1. HSBC removed the case to this Court on August 20, 2022. Dkt. No. 1. Plaintiff filed her amended complaint, which is the active complaint for the purposes of this motion, on October 14, 2022. Dkt. No. 23 ("FAC"). HSBC filed its motion to dismiss on November 7, 2022. Dkt. No. 29 (motion); Dkt. No. 30 (memorandum in support, or "Def's Mem."). That motion is fully briefed. Dkt. No. 34 ("Pl's Opp."); Dkt. No. 35 ("Reply").

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[ ]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

4

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However,

> "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." A complaint must therefore contain more than "naked     assertion[s] devoid of further factual enhancement." Pleadings that contain "no more than conclusions . . . are not entitled to the assumption of truth" otherwise applicable to complaints in the context of motions to dismiss.

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87–88 (2d Cir. 2013) (alterations in original) (quoting *Iqbal*, 556 U.S. at 678–79). Thus, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (alteration in original) (citing *Twombly*, 550 U.S. at 555, 557).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006) (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)). In that context, "[a] court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). "The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis in original).

### III. DISCUSSION

Ms. Thacker brings three causes of action: (1) for discrimination under the New York State Human Rights Law (the "NYSHRL"), (2) for discrimination under the New York City Human Rights Law (the "NYCHRL"), and (3) for retaliation under the New York Labor Law (the "NYLL"). FAC ¶¶ 42–49. Because she has plausibly alleged that she suffered an adverse employment action under facts suggesting at least a minimal inference of discriminatory intent, Ms. Thacker has properly stated her NYSHRL and NYCHRL claims. But because Ms. Thacker's poorly formulated pleadings fail to plausibly connect any adverse action that she experienced to activities protected under Section 740 of the NYLL, she has not sufficiently stated her retaliation claim.

**A. Plaintiff's NYSHRL claim is plausibly pleaded.**

Under the NYSHRL, it is "an unlawful discriminatory practice" for an employer, based on an individual's gender or sex, "to discharge from employment . . . or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). Until the NYSHRL's amendment in August 2019 (made effective as of October 11, 2019), "discrimination claims brought under the NYSHRL" were reviewed "according to the same standards" as "Title VII discrimination claims." *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016) (quoting *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 n. 2 (2d Cir. 2010)). But the August 2019 revision to the NYSHRL "has put in place a more lenient standard of liability that has been likened to that of the NYCHRL." *Yost v. Everyrealm, Inc.*, --- F. Supp. 3d ---, 2023 WL 2224450, at *11 (S.D.N.Y. 2023). "However, [the NYSHRL's] amendments only apply to claims that accrue on or after the effective date of October 11, 2019." *Wellner v. Montefiore Med. Ctr.*, No. 17-cv-3479, 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019). Though most (but not all) of the events that underlie Ms. Thacker's discrimination claims occurred after that date, *see* FAC ¶¶ 12–34, the Court need not parse here which rule applies to which allegations because—for the reasons

that follow—Ms. Thacker's complaint satisfies even the loftier standard used under the pre-amendment NYSHRL.

"[F]or a discrimination claim to survive a motion to dismiss" under that rubric, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff [(1)] is a member of a protected class, [(2)] was qualified, [(3)] suffered an adverse employment action, and [(4)] has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon v. Spindler*, --- F.4th ---, 2023 WL 2903401, at \*10 (2d Cir. 2023) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). And the Second Circuit has also articulated, as a pleading standard for "discriminatory failure to promote" claims, that a "plaintiff ordinarily must demonstrate that: (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir. 2009).[4]

There is no dispute that Ms. Thacker, as a woman of Indian national origin, is a member of a protected class. FAC ¶ 5. And she has alleged at least one incident through which she can establish the other elements of her NYSHRL claim case at this stage: HSBC's decision to hire Ms. Yungbluth for the Wealth Chief of Staff role in December 2020, despite Ms. Thacker's application for the position. *See id.* ¶¶ 17–20. Based on the pleadings, the Court can infer that this role represented a promotion for Ms. Thacker, and "it is well settled that 'failing to promote' an employee can constitute 'a significant change in employment status' that is tangible and thereby qualifies as an adverse employment action under" the NYSHRL. *Buon*, 2023 WL 2903401, at \*11 (quoting

---

[4] The extent to which this failure-to-promote-specific standard remains viable post-*Buon* may be questionable, as the Second Circuit in that case considered a discrimination case based on a plaintiff's denial from certain positions and yet did not make use of this standard. *See Buon*, 2023 WL 2903401, at \*10. But in any event, for the reasons explained in this section, Ms. Thacker's pleadings satisfy the failure-to-promote standard as well as the more general pleading standard used in *Buon*.

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); *see* FAC ¶ 17 (describing the interview process for the Wealth Chief of Staff role); *Burch*, 551 F.3d at 124 (noting that Courts must draw all reasonable inferences at the motion-to-dismiss stage in favor of the non-movant—here, Ms. Thacker).

Ms. Thacker, moreover, has not only alleged that she was qualified for that role, but that her qualifications far exceeded those of Ms. Yungbluth, whom HSBC ultimately hired. *See* FAC ¶ 19 (noting that Ms. Thacker had more banking and other experience, as well as more qualifications, than Ms. Yungbluth). That allegation not only satisfies Ms. Thacker's burden to allege that she was qualified for the role, but also—because Ms. Yungbluth is white—creates a minimal inference of discriminatory intent. *See Buon*, 2023 WL 2903401, at *13 (noting that where the plaintiff alleged "that she was qualified for the position she sought or held and was either denied appointment or replaced by a person of another racial and/or ethnic group who lacked her qualifications," those allegations gave "rise to a plausible inference of discrimination" (internal quotation marks omitted)). And Ms. Thacker has further added to that inference of discriminatory intent by alleging that an HR manager told her "you're dark." FAC ¶ 33; *see Buon*, 2023 WL 2903401, at *13 (noting that while single incidents of disparate treatment "may not separately rise to the level of adverse employment actions," they may help the plaintiff "create a mosaic [of] bits and pieces of available evidence that, taken together, support a plausible inference of intentional discrimination" (internal quotation omitted)).

HSBC contends that Ms. Thacker's claim should nonetheless fail because it fails to "connect the qualifications she claims to have with the actual qualifications or job duties of the Wealth Chief of staff role." Def's Mem. at 9. But Ms. Thacker does allege that her qualifications were "critical for success in the role at issue." FAC ¶ 20. And more importantly, *Buon* makes clear that a plaintiff's allegation that she is more qualified for a certain role than another individual outside of her

protected class, coupled with statements that the plaintiff indeed applied for the position and that the person from outside of the protected class was hired, is enough to create a minimal inference of discrimination (especially where supported by other incidents of alleged discrimination). *See Buon*, 2023 WL 2903401, at *13 (finding an inference of discrimination established without engaging in any discussion about what the employer considered key qualifications for the roles at issue).[5]

In sum, Ms. Thacker has plausibly pleaded—through her allegations about Ms. Yungbluth's hiring for the Wealth Chief of Staff role and the HR manager's comment—that she suffered an adverse action under circumstances giving rise to at least a minimal inference of her employer's discriminatory intent. As a result, HSBC's motion to dismiss is denied with respect to Plaintiff's NYSHRL claim.[6]

### B. Plaintiff's NYCHRL claim is plausibly pleaded.

Section 8-107(1) of the NYCHRL makes it "an unlawful discriminatory practice" in New York City "[f]or an employer . . . because of the actual or perceived . . . race, creed, color, [or] national origin . . . of any person . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8-107(1).[7] To survive a

---

[5] The Court notes that HSBC's preferred addition to the established pleading requirements—that a plaintiff must allege, at the motion-to-dismiss stage, what qualifications the employer considered most important for a given role—would work a substantial unfairness; in advance of any discovery, plaintiffs will rarely be in the position to know the employer's preferences.

[6] The Court notes that Ms. Thacker's *other* allegations do little to support her discrimination claims. She admits that she did not apply for the Wealth Chief of Staff role when it reopened in July 2021, which precludes a finding that her failing to get that role was an adverse action. FAC ¶¶ 26–28. And because Ms. Thacker does not include any information about her qualifications relative to the white male who was appointed to the Wealth and Personal Banking Chief of Staff role in August 2021, that appointment does not raise as strong of an inference of discriminatory intent as does the hiring of Ms. Yungbluth. FAC ¶¶ 29–31; *see Buon*, 2023 WL 2903401, at *13 (noting that a stronger inference is supported when the plaintiff "allege[s] that the individual who secured the position [is] . . . less qualified"). But in any event, for the reasons explained earlier in this section, her allegations about the appointment of Ms. Yungbluth and the comment by the HR manager are sufficient, under binding Second Circuit caselaw, to deny HSBC's motion to dismiss the NYSHRL claim.

[7] The amended complaint states that HSBC "has violated New York City Administrative Code § 8-502(a)"—the NYCHRL's right-to-sue provision—without pointing to what underlying provision HSBC violated. FAC ¶ 46. In line with its duty to make reasonable inferences in Plaintiff's favor, and given the allegations in the complaint, the Court construes the FAC to allege a violation of NYCHRL § 8-107. *See Burch*, 551 F.3d at 124.

motion to dismiss under the NYCHRL, a plaintiff must plausibly allege that she "has been treated less well at least in part because of her [protected characteristic]." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (emphasis and internal citation omitted).

The NYCHRL also provides that its "provisions" "shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof," regardless of how comparable provisions of similar statutes are construed. N.Y.C. Admin. Code § 8-130(a). As a result, it operates as a "one-way ratchet, by which interpretations of state and federal civil rights statutes can serve only as a floor below which the [NYCHRL] cannot fall." *Mihalik*, 715 F.3d at 109 (internal quotation marks omitted); *see also Jacobsen v. N.Y.C. Health & Hosps. Corp.*, 22 N.Y. 3d 824, 833–34 (2014) (noting that the NYCHRL "provides even greater protection against . . . discrimination" than do comparable statutes). Accordingly, because Ms. Thacker has plausibly stated her NYSHRL discrimination claim, she has done the same with respect to her NYCHRL claim, and HSBC's motion to dismiss is denied as to that claim also.

**C. Plaintiff's NYLL § 740 claim is not plausibly pleaded.**

While Ms. Thacker has plausibly pleaded her discrimination claims, her retaliation claim under Section 740 of the NYLL fails.[8] That statute, as relevant, prohibits "[a]n employer" from taking "any retaliatory action against an employee . . . because the employee . . . discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation." N.Y. Lab.

---

[8] The Court notes that much of this portion of Ms. Thacker's complaint is near-indecipherable. That may be because parts of it were copied from another document without sufficient (or perhaps any) editing. One example of many is that in paragraph 35 of the complaint, the complaint's formatting abruptly changes several times, and contains a footnote that—because it is listed as footnote 49 despite being the only footnote to appear in the complaint—appears to be lifted from a different document. FAC ¶ 35. The Court is required at this stage to accept Ms. Thacker's pleaded facts as true and to make reasonable inferences in her favor, and it has done so throughout this order. *See Chambers*, 282 F.3d at 152; *Burch*, 551 F.3d at 124. What it may *not* do (even for *pro se* litigants) is to "rewrite [a plaintiff's] pleading or invent factual scenarios for [her]," *Massapinero v. Rikers Island Mental Health Dep't Servs.*, No. 13-cv-530, 2015 WL 1473313, at *3 (S.D.N.Y. Mar. 31, 2015)—and that is all the more true for plaintiffs, like Ms. Thacker, who are represented by counsel. Ms. Thacker's counsel should bear these issues in mind should Plaintiff choose to replead this claim. *See infra* Part IV.

L. § 740(2).⁹  Under the statute, often referred to as New York's 'whistleblower law,' a plaintiff must first allege that she disclosed or threatened to disclose to a supervisor an activity, policy, or practice of the employer that the employee at least reasonably believed was illegal.  *Id.*  The plaintiff must then point to a retaliatory, adverse action taken by the employer in response to that complaint.  *See* N.Y. Lab. L. § 740(1)(e).  As a result, for an employer "[t]o run afoul of the [whistleblower] statute," "the adverse action must [have been] taken 'because' the employee engaged in protected activity.  In other words, the whistleblower statute . . . requires some causal connection between an adverse personnel action and a report of [illegal] activity."  *Duarte v. St. Barnabas Hosp.*, 265 F. Supp. 3d 325, 354 (S.D.N.Y. 2017) (quoting *Varughese v. Mount Sinai Med. Ctr.*, No. 12-cv-8812, 2015 WL 1499618, at *68 (S.D.N.Y. Mar. 27, 2015)).

Ms. Thacker's complaint fails to plead a Section 740 claim under these standards.  Plaintiff does not point to any *direct* evidence of retaliation, instead relying on timing:  she alleges that because she "objected to numerous securities law violations during the course of the relevant time period and [was] subsequently subjected to numerous adverse employment actions," she has met her burden of plausibly alleging that she was retaliated against for her complaints.  Pl's Opp. at 9.  It is true that at the motion-to-dismiss stage, the causal element for federal retaliation claims can be sufficiently pleaded through "temporal proximity" between a protected activity and an adverse action so long as that proximity is "sufficiently short."  *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013).  While neither party addresses whether this federal pleading rule is applicable to Section 740, having found no cases that address the issue, the Court will assume

---

⁹ As Defendant notes, this statute was amended and broadened in January 2022; prior to that date, it only protected against retaliation based on violations of law that presented a substantial and specific danger to public safety or which constituted health care fraud.  *See* Def's Mem. at 14–15.  But the majority of Plaintiff's alleged complaints and Defendant's alleged retaliatory acts occurred *after* January 2022.  *See* FAC ¶¶ 35–37.  And because, for the reasons explained in this section, Plaintiff has failed to state a claim under the current version of § 740, the Court need not analyze whether any specific alleged protected or retaliatory acts should be excluded from her complaint because they occurred before the date of the law's amendment.

11

without deciding that it is.  *See Burch*, 551 F.3d at 124.  But even making that assumption, Ms. Thacker's claim cannot survive.

For one thing, Ms. Thacker makes no attempt to link any specific activity protected by the whistleblower statute to a specific adverse action taken by HSBC.  *See* FAC ¶¶ 35, 37 (listing alleged protected activities and alleged adverse actions without connecting them in any way).  Because the complaint is structured in that way, the Court is forced to infer which adverse actions Ms. Thacker is alleging arose from what protected conduct; her briefing provides no assistance.  *See* Pl's Opp. at 9 (merely referring generally to paragraph 37 of the complaint and the "retaliatory conduct that occurred throughout 2022 [which was] the same period of time [that] Ms. Thacker was raising many of her compliance concerns").

And even with the Court attempting to find the connections that Ms. Thacker does not draw in her complaint or briefing between her alleged protected activities and the allegedly retaliatory actions, the Section 740 claim is not plausibly pleaded.  First, Ms. Thacker alleges many adverse actions without specifying a date on which they occurred.  *See* FAC ¶ 37 (listing a series of alleged adverse actions on pages twelve and thirteen without any dates).  Because the Court cannot tell whether they occurred before or after any protected activity, these actions fail to establish the causal link required for a Section 740 claim.  *Billhofer v. Flamel Techs., SA*, 663 F. Supp. 2d 288, 297 (S.D.N.Y. 2009) ("[I]t is an inescapable rule of causality that a cause must precede its effect."); *see Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)); *Gerritsen v. Glob Trading, Inc.*, No. 06-cv-3656, 2009 WL 262057, at *11 n.13 (E.D.N.Y. Feb. 4, 2009) ("[T]he Court cannot amend plaintiffs' Complaint *sua sponte*.").

Second, many of the other adverse actions alleged by Plaintiff are not—as pleaded—barred by Section 740. That statute defines a prohibited retaliatory action as:

> an adverse action taken by an employer or his or her agent to discharge, threaten, penalize, or in any other manner discriminate against any employee or former employee exercising his or her rights under this section, including (i) adverse employment actions or threats to take such adverse employment actions against an employee in the terms of conditions of employment including but not limited to discharge, suspension, or demotion; [or] (ii) actions or threats to take such actions that would adversely impact a former employee's current or future employment . . . .

N.Y. Lab. L. § 740(1)(e). The parties have not briefed whether retaliatory actions as defined in Section 740 equates to the federal standard for actions that can be used to support a discrimination claim, the (somewhat more lenient) federal standard for actions that can be used to support a retaliation claim, or some other standard altogether. *Compare Buon*, 2023 WL 2903401, at *1 (noting that for the purpose of Title VII discrimination claims, an "adverse employment action" is "define[d]" as "a 'materially adverse change' in the terms and conditions of employment" (quoting *Sanders v. N.Y.C Hum. Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)), *with Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (determining that for the purpose of Title VII retaliation claims, a "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination'" (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006))). To the Court's knowledge, no other court has resolved this issue. *Cf. Sethi v. Narod*, 12 F. Supp. 3d 505, 527 n.7 (E.D.N.Y. 2014) (noting that a state-court decision holding that an assault would be an adverse action under Section 740 did not have preclusive effect over what constituted an adverse employment action for later-filed federal discrimination claims because the state-court decision "concerne[d] whether [an assault] constituted an adverse action for purposes of a *retaliation* claim"). Accordingly, the Court

13

will again assume without deciding that the more lenient standard applies, and that an action that "well might have dissuaded a reasonable worker from making or supporting" a complaint constitutes a retaliatory action under Section 740. *Burlington*, 548 U.S. at 68 (internal quotation omitted).

Even under this standard, however, most of Plaintiff's allegations are insufficient. Many of the examples of supposed adverse actions are plainly nothing more than "petty slights or minor annoyances that often take place at work" and that do not individually or in the aggregate represent actionable retaliation. *Burlington*, 548 U.S. at 68; *see* FAC ¶ 37 (after Ms. Thacker sent an email in May 2022, a co-worker responded by suggesting that she was being adversarial); *id.* (a May 2022 email from Mr. Pittsey did not address an issue that Ms. Thacker had wanted him to address); *id.* (Mr. Pittsey hired a team without the approval of Ms. Thacker); *id.* (a co-worker, during "most of 2022," threatened to blame Ms. Thacker's team for an issue that was actually the co-worker's fault); *id.* (in June 2022, the HR department scheduled a meeting with Ms. Thacker).[10] And in several other instances, Ms. Thacker simply does not provide sufficient factual explanation of what occurred as part of the alleged adverse actions, precluding the Court from concluding that they constituted more than typical workplace annoyances. *See Iqbal*, 556 U.S. at 678 (noting that a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss (internal quotations omitted)); FAC ¶ 37 (Ms. Thacker alleging that in March 2022 "Wealth Centers [was] taken away from Ms. Thacker and given to Pittsey's Chief of Staff," but not providing any facts about what "Wealth Centers" is or what impact taking it away from her had); *id.* (alleging that her title

---

[10] Several of these allegations are not actionable for the additional reason that they do not allege that an "employer"—as opposed to a co-worker—took "retaliatory action" against Ms. Thacker. N.Y. Lab. L. § 740(2).

14

was changed in April 2022 but not explaining why (or even that) her new title was worse); *id.* (alleging that she was replaced in some meetings by a person who used to work for her, but not explaining how many meetings, the importance of the meetings, or otherwise providing details about the impact that this replacement had on her as an employee).

Ms. Thacker does point to one alleged adverse action that would meet Section 740's threshold: that Mr. Pittsey gave her an abnormally low bonus on February 23, 2022. FAC ¶ 37. A bonus reduction constitutes a "material loss of benefits" that is a paradigmatic "materially adverse change[ ]" sufficient to support a federal discrimination claim, *Buon*, 2023 WL 2903401, at *10 (internal quotation omitted); it therefore necessarily satisfies the lower standard applicable to retaliation claims. And Ms. Thacker alleges that this low bonus, moreover, came just weeks after she met with HSBC's legal team "[i]n [e]arly February 2022" to discuss changing Ms. Thacker's reporting structure such that she would no longer report to Mr. Pittsey. FAC ¶ 35. This is a "sufficiently short" period to make a "showing of causation through temporal proximity." *Zann Kwan*, 737 F.3d at 845 (reaching the same conclusion regarding a three-week gap between a protected activity and an adverse action).

The problem—and what prevents this allegation from sufficiently stating a Section 740 claim—is that Plaintiff has not adequately articulated what she said to HSBC's legal team in that early February 2022 meeting. Section 740 requires (as relevant) that an employee "disclose, or threaten to disclose to a supervisor . . . an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation." N.Y. Lab. L. § 740(2)(a). New York courts have stated that to meet this requirement, while an employee "need not specify the actual law, rule or regulation violated" when making a complaint to a supervisor, "[she] must identify the particular activities, policies or practices in which the employer allegedly engaged, so that the complaint provides the employer with

15

notice of the alleged complained-of conduct." *Webb-Weber v. Cmty. Action for Human Servs., Inc.*, 23 N.Y.3d 448, 453 (2014).

The Court cannot find, based on the language in Plaintiff's pleadings, that her meeting with Legal and Compliance satisfied the requirement articulated in *Webb-Weber*. Plaintiff states that "[i]n [e]arly February 2022, Ms. Thacker met with Legal and Compliance . . . to discuss changing Ms. Thacker's reporting structure from Mr. Pittsey to someone else as his legally dubious decisions were placing Mr. Thacker's licenses at risk." FAC ¶ 35. But while the phrase "as his legally dubious decisions were placing Ms. Thacker's licenses at risk" clearly alleges that Ms. Thacker wanted to change reporting structures because of Mr. Pittsey's legally suspect actions, it does not state that she informed Legal and Compliance of this reason for her desired change (as is necessary under Section 740). Much less does that phrase in her pleading properly allege that Ms. Thacker "identif[ied] the particular activities, policies or practices in which the employer allegedly engaged, so that the complaint provides the employer with notice of the alleged complained-of conduct." *Webb-Weber*, 23 N.Y.3d at 453. Put simply, the Court cannot read into Plaintiff's complaint a statement that she identified to Legal and Compliance the particular activities of Mr. Pittsey's that she believed were "legally dubious." *Gerritsen*, 2009 WL 262057, at *11 n.13 ("[T]he Court cannot amend plaintiffs' Complaint *sua sponte*."). But even if the Court *could* do so (which it cannot), Ms. Thacker would still be faced with an additional problem: the complaint does not state that she informed Legal and Compliance that she believed Mr. Pittsey's decisions were *illegal*, as opposed to "legally dubious." FAC ¶ 35; *see* N.Y. Lab. L. § 740(2)(a) (noting that employees are protected from retaliation after disclosing or threatening to disclose "an activity, policy or practice of the employer that the employee reasonably believes *is in violation of law, rule or regulation*" (emphasis added)).

For all of these reasons, Ms. Thacker's alleged complaint in early February 2022 cannot, as pleaded, serve as the protected activity for her Section 740 claim. And she alleges no other plausibly pleaded protected activity that occurred before her February 23, 2022 bonus reduction such that the reduction could have been retaliatory.[11] As a result, and because there are no other alleged retaliatory actions that can support Ms. Thacker's Section 740 claim, HSBC's motion to dismiss is granted as to that claim.

**IV. LEAVE TO AMEND**

"It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires."). It is true that leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (internal citation omitted). But none of those conditions apply here: the Court cannot conclude that a further amendment of the complaint would be futile. And Plaintiff has not yet had the opportunity to amend the complaint with the benefit of a ruling from the Court. "Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015). Plaintiff is therefore granted leave to file an amended complaint to replead her Section 740 claim. Any amended complaint must be filed and served no later than twenty-one days from the date of this order.

---

[11] Plaintiff's single alleged protected activity before that time is that in June 2021, she "raised concerns around the PLA with Chile HSBC. RM in Chile violating the agreement." FAC ¶ 35. Because her pleadings do not explain further what the "PLA" is, what (or who) "RM in Chile" is, or what "agreement" was "violated," the Court cannot possibly evaluate this allegation. This is another statement that appears to have been lifted from a separate document without any attempt to connect it to the relevant legal standards here.

**V. CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is DENIED as to Plaintiff's NYSHRL and NYCHRL discrimination claims and is GRANTED as to Plaintiff's NYLL retaliation claim.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 29.

SO ORDERED.

Dated:  April 24, 2023  
New York, New York

_____  
GREGORY H. WOODS  
United States District Judge